IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY MARTINEZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-5278 |
| | : | |
| OFFICER JOSEPH KOURY, et al. | : | |
| Defendant | : | |

M E M O R A N D U M

**STENGEL, J.**                                                                                                  **July 24, 2008**

This is a civil rights case arising from a police search. Defendants Joseph Koury and the City of Allentown moved to dismiss portions of the plaintiff's complaint on April 9, 2007. Counts I and X of the complaint were dismissed on June 18, 2007. Defendants have now filed an uncontested motion for summary judgment regarding Counts VI, IX, XIV and XV. For the reasons discussed below, I will grant summary judgment for Counts VI, IX, XIV and XV.

I.      BACKGROUND

Plaintiff Gary Martinez is an adult who resides in Allentown, Pennsylvania. On December 2, 2004, at approximately 1:00 a.m, Martinez walked to a convenience store near his home to purchase snacks and a soda. He called his friends to ask them to give him a ride to his mother's house. His friends, Bernard Krokus and Elio Ramos, picked him up at the store and drove to Martinez's mother's house at 215 E. Lynnwood Street in Allentown.

Defendants Officer Mark Marino and Officer Joseph Koury, who were driving a

marked Allentown Police paddy wagon, stopped the car Martinez was riding in as it turned onto Jerome Street. Defendants Sergeant Ressler and Officer Jane Doe arrived on the scene separately in an Allentown Police patrol car.

Marino approached the car and stated that the occupants looked suspicious and accused them of dealing drugs. The police ordered Krokus and Ramos out of the car and searched it without finding drugs or any other unlawful items. The police ordered Martinez out of the car and told Krokus and Famos to get back into the car and wait. Marino accused Martinez of being a drug dealer and made Martinez empty his pockets and patted him down. The officers did not find any drugs or other illegal substances. The police did find a ten dollar bill and accused Martinez of having received the money in a drug sale. Martinez showed the officers his work schedule to try to show that he had a full-time job and was not a drug dealer.

Sergeant Ressler ordered Martinez into the paddy wagon with officers Marino and Koury. Marino ordered Martinez to remove all of his clothing while Koury held a side-handled baton in front of Martinez in a menacing manner. Once Martinez was completely naked, the police ordered him to bend over and spread his buttock cheeks and then to face them and lift up his scrotum. This search produced no drugs or unlawful substances.

The police ordered Martinez to put his clothes back on and continued to question him about why he was waiting at the convenience store and accused him of attempting to rob the store. Marino ordered Martinez to walk home and not to reenter his friend's car.

No criminal charges were ever filed against Martinez.

On December 1, 2006, Martinez filed a complaint against Officer Marino, Officer Koury, Sergeant Ressler, Officer Doe, and the City of Allentown.  Martinez alleges that the Allentown Police Department has a *de facto* policy of conducting unlawful strip searches; has deployed a paddy wagon specifically for this purpose; and deliberately fails to document these searches.  The complaint[1] alleges: (1) deprivation of Martinez's federal constitutional rights under color of state law; (2) unlawful seizure in violation of the Fourth Amendment; (3) unlawful search in violation of the Fourth Amendment; (4) false imprisonment in violation of the Fourth Amendment; (6) supervisory liability; (7) failure to intervene by non-supervisory participants; (8) civil conspiracy; (9) municipal liability; (10) violation of Martinez's state constitutional right to be free from unreasonable searches and seizures; (11) false arrest and illegal imprisonment in violation of state law; (12) civil conspiracy in violation of state law; (14) intentional infliction of emotional distress in violation of state law; (15) invasion of privacy in violation of state law.

On April 9, 2007, defendants Koury and the City of Allentown filed a motion to dismiss counts I and X.  On April 24, 2007, defendants Marino and Ressler were dismissed for lack of prosecution.  I dismissed Counts I and X on June 18, 2007.  For the reasons stated below, I will grant defendants' motion for summary judgment regarding

---

[1] Counts 1-4, 6-8, 10-12, 14-15 are against all individual defendants.  Count 9 is against the City of Allentown.  There is no Count 5 or 13 in the complaint.  An additional misnumbered count (the second count IV) requests a jury of twelve jurors.

Counts VI, IX, XIV and XV.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   DISCUSSION

#### A. Supervisory Liability

Plaintiff alleges in Count VI of his complaint that each individual had supervisory liability for the actions of the other individual defendants. Officer Koury is now the only remaining individual defendant that this claim may apply.

The Third Circuit explained supervisory liability as follows:

> "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (emphasis added). See also, e.g., Andrews v. City of Philadelphia, 895 F.2d

> 1469, 1478 (3d Cir.1990) ("there must be some affirmative conduct by the supervisor that played a role in the discrimination") (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976). Our cases have held that "actual knowledge and acquiescence" suffices for supervisory liability because it can be equated with "personal direction" and "direct discrimination by the supervisor." *Id.* (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir 1988). Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor "acquiesced" in (i.e., tacitly assented to or accepted) the subordinate's conduct. But where actual *supervisory authority is lacking*, mere inaction, in most circumstances, does not reasonably give rise to a similar inference. As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have "acquiesced" in the latter's conduct.

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir.1997) (emphasis added).

In this case, Officer Koury did not have supervisory authority with regard to any of the officers at the scene of the stop. Sergeant Edward Ressler was Officer Koury's immediate supervisor and his partner, Officer Mark Marino, was senior to him. Officer Koury did not have supervisory authority. I will grant summary judgment for Count VI of

the plaintiff's complaint.

**B. Monell Claim**

The plaintiff asserts a claim of municipal liability under § 1983 against the City of Allentown in Count IX.  Plaintiff makes the following allegations against the City: (1) deliberate indifference to constitutional rights of citizens; (2) failure to investigate complaints of police misconduct; (3) failure to screen during the hiring process for police officers; (4) failure to train and supervise police officers; (5) failure to re-train police officers who engage in police misconduct, and (6) failure to adopt policies to deter police misconduct.

In the seminal case of Monell v. Department of Soc. Serv., 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 690-91.  To establish § 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." Id.  The Third Circuit refined these definitions and explained that the policy

or custom may be established (1) [w]hen a decisionmaker[2] possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict or (2) through a course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990).[3]

Beyond identification of a policy or custom, establishment of § 1983 municipal liability requires the second element of causation. As the Supreme Court emphasized in Board of the County Commissioner's of Bryan County v. Brown, 520 U.S. 397 (1997), "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." Id. at 404.  Elaborating on this point, the court explained that:  [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  Id.  If the policy or custom of the municipality does not facially violate federal law, causation

---

[2] The question of who is a decisionmaker or "policymaker" is a question of state law.  City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988). "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990).

[3] Note that the burden of identifying the challenged policy, attributing it to the city itself, and showing a causal link between execution of the policy and the injury suffered, rests with the plaintiff.  Losch v. Borough of Parkburg, 736 F.2d 903, 910 (3d Cir.1984).

can only be established by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence.  Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Finally, to maintain § 1983 municipal liability, a plaintiff must present a sufficient degree of evidence.  In Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the Supreme Court effectively defined the body of proof required:  Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker ... but where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the policy and the constitutional deprivation.  Tuttle, 471 U.S. at 823.

In this case, plaintiff has failed to present sufficient evidence to support a Monell claim against the City of Allentown.  The Complaint only refers to the incident in question and fails to cite any unlawful motor vehicle stops or any unlawful strip searches conducted by the Allentown Police Department.  Plaintiff has not specifically called into question an official proclamation, policy or edict or a well-settled course of conduct that virtually constitutes law.  Andrews, 895 F.2d at 1480.  Furthermore, plaintiff has not met his burden of identifying the challenged policy and showing the causal link between the

execution of the policy and the injury suffered.  Losch v. Borough of Parkburg, 736 F.2d 903, 910 (3d Cir.1984).  The alleged strip search by a non-supervisory employee of the state, without any supporting policies, evidence or statistics, does not establish a policy or custom of unconstitutional conduct on behalf of the city.

Similarly, there is no evidence of deliberate indifference on the part of the city officials.  The city had an adequate policy governing searches and seizures, including stop and frisks, field interviews and strip searches.[4]  Furthermore, the city reviewed and updated its procedures in October 2004 and distributed the revised procedures in February 2005 to the Allentown Police Department.  The only suggestion of other instances of unlawful strip searches and deliberate indifference was made by the plaintiff in his deposition testimony.  He stated that he read about another incident involving an unlawful strip search in the newspaper involving two women.  Shortly thereafter the jury returned a verdict for the defendant police officers in that matter.  When, Chief of Police, Joseph Blackburn became aware that consenual strip searches were being conducted by members

---

[4] Section XIV of General Order 404 provided as to strip searches:
  C.  Strip searches shall not be permitted except upon approval of a supervisor and in the following situations;

1. An officer has reasonable cause to believe an arrestee is concealing a weapon.
2. An officer has reasonable cause to believe an arrestee is concealing contraband
3. Upon the authority of a valid search warrant.

A strip search consists of the removal or rearrangement of any clothing so as to permit a visual inspection of the genitals, buttocks, female breasts, or undergarments of an arrestee.

A strip search shall only be conducted by a member of the same sex.

of the Allentown Police Department in paddy wagons brought to the scene of <u>Terry</u>[5] stops, he issued Special Order 2005-11. This Order precluded any further strip searches on the street even with the consent of the person searched and clarified that strip searches were only permissible where there was probable cause to believe that the person in custody was concealing a weapon, a controlled substance or contraband. Plaintiff's failure to present evidence in support of his deliberate indifference allegation, the city's existing policy and procedures, the city's updated and revised procedures as well as the Chief of Police's Special Order clearly illustrates that the city was not indifferent to the actions of their police officers. The City of Allentown is entitled to summary judgment as to Count IX of the plaintiff's complaint.

### C. Intentional Infliction of Emotional Distress

Count XIV alleges a claim under Pennsylvania law of intentional infliction of emotional distress. Plaintiff admitted in his deposition testimony that he has not received any medical treatment and has failed to produce an expert medical report or testimony stating that he has suffered any type of injury.

In order for an intentional infliction of emotional distress claim "to survive a motion for summary judgment, the plaintiff must present competent medical evidence of causation and severity of his emotional distress, as well as proof that the alleged conduct was intentional and outrageous." <u>Silver v. Mendel</u>, 894 F.2d 598, 607 (3d. Cir.

---

[5] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

1990)(citing Williams v. Guzzardi, 875 F.2d 46, 52 (3d. Cir. 1989)); See Warner v. Montgomery Twp., 2002 WL 1623774, *10 (E.D. Pa. July 22, 2002)(granting defendant's motion for summary judgment regarding the plaintiff's intentional infliction of emotional distress claim because the plaintiff failed to offer any competent medical evidence that he suffered severe emotional distress); Young v. Lukens Steel Corp., 1994 WL 167953, *12 (E.D. Pa. May 4, 1994)(stating that to make out a claim for the tort of intentional infliction of emotional distress, there must be objective proof supported by competent medical evidence that the plaintiff actually suffered emotional distress).

Plaintiff has failed to present any medical evidence in support of his claim of emotional distress. Thus, the defendants are entitled to summary judgment on the Plaintiff's state law claim of intentional infliction of emotional distress.

**D.   Invasion of Privacy**

Mr. Martinez asserts a claim under Pennsylvania law for an invasion of privacy in Count XV. The alleged strip search occurred on December 2, 2004 and plaintiff brought this suit on December 1, 2006. The Pennsylvania Judicial Code provides at 42 Pa.C.S. § 5523(1) that an action for invasion of privacy must be commenced within one year. Plaintiff's lawsuit was instituted just short of two years after his cause of action arose. Plaintiff's claim of invasion of privacy is barred by the applicable one year statute of limitations.

## IV. CONCLUSION

For the reasons discussed above, I will grant the defendants' motion for summary judgment on Counts VI, IX, XIV and XV. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY MARTINEZ,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 06-5278 |
| | : | |
| **OFFICER JOSEPH KOURY, et al.** | : | |
| **Defendant** | : | |

**O R D E R**

**STENGEL, J.**

AND NOW, this 24th day of July, 2008, upon consideration of defendant's Motion for Partial Summary Judgment on Counts VI, IX, XIV and XV (Document # 24), it is hereby **ORDERED** that the motion is **GRANTED**.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

-14-